NON-EXCLUSIVE SERVICE AGREEMENT DATED THIS _____ DAY OF _____ 2004. ("Effective Date") BETWEEN

**INTELSAT USA SALES CORP.** ("Intelsat"), a company incorporated under the laws of the State of Delaware with offices at 3400 International Drive, N.W., Washington, D.C. 20008;

AND

**GALAXY BROADCASTING NETWORKS LLC**, a company incorporated under the laws of Maryland with offices at 2900 Linden Lane, Suite 100, Silver Spring, MD 20910 (the "Customer"). Intelsat and the Customer shall each be referred to herein individually as a "Party" and collectively as the "Parties".

THE PARTIES HEREBY AGREE AS FOLLOWS:

1. **DEFINITIONS AND INTERPRETATION**

1.1 This Agreement consists of the following documents ("the Agreement"). In the event of any inconsistency or conflict this order of precedence shall apply:

Any Service Contracts issued under this Agreement.
Annex A. Service Descriptions:
A-1 – Leases;
A-2 – (Intentionally Omitted);
A-3 – (Intentionally Omitted);
A-4 – (Intentionally Omitted);
A-5 – (Intentionally Omitted);
A-6 – Video Solutions.
(other Service Description may be added from time to time)
This Non-Exclusive Service Agreement
Annex B. Priority and Restoral Policy.
Annex C. Technical Guidelines and Operating Procedures.
Annex D. Definitions.
Annex E. Ordering Procedures.

1.2 The headings in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

1.3 The following terms shall have the following meanings:

**Charges** means all charges, including recurring and non-recurring specified in any Service Contract, or as may otherwise be agreed;

**Collateral** means any form of financial security which Intelsat may require from the Customer prior to the provision of any Services;

**Confidential Information** means information of a confidential or proprietary nature relating to a Party, its affiliates or other representatives that is reduced to writing and marked as Confidential or similarly designated, not including information developed independently by the other Party or lawfully received from a third party not under an obligation of confidentiality, or information that reaches the public domain other than by a breach of this Agreement;

**Earth Station** means any equipment (whether fixed or transportable) owned or operated by the Customer that forms an interconnection point with a Service;

**Initial Period** means a period of 5 years;

**Intellectual Property** means any patent, copyright, design, trademark, tradename, servicemark, logo, trade secret or other moral, industrial or intellectual property rights whatsoever;

**Interruption Credit** means a credit to be given by Intelsat in accordance with the applicable Service Description;

**Ordering Procedures** means the procedures set out in each Service Description or in Annex E which apply to the ordering of a Service;

**Satellite Capacity** means capacity provided by Intelsat in connection with the provision of Services;

**Satellite** means an object, located or intended to be located beyond the earth's atmosphere, that is or will be used for radio communications;

**Service** means a service offered by Intelsat in accordance with the applicable Service Description and supplied by Intelsat to the Customer under a Service Contract;

**Service Commencement Date** means the date and time specified in a particular Service Contract for the commencement of that Service or, if earlier, the date on which the Customer first makes use of that Service;

**Service Contract** means a binding agreement by the Customer to reserve and procure, and by Intelsat to provide, a specific Service or Services in accordance with this Agreement;

**Service Interruption** means an unavailability, delay or interruption of a Service as set out in the relevant Service Description;

**Service Order** means an order for Service(s) submitted by the Customer;

**Service Termination Date** is the date specified in a Service Contract for the termination of a Service;

**Space Segment** means Intelsat's Satellites in orbit, and all related infrastructure owned, leased or operated by, or on behalf of, Intelsat to support the operation of the Satellites;

**Taxes** means any tax or other assessment that may be asserted by any government or taxing authority including, without limitation, withholding, excise, sales, value-added, gross-receipt, transfer taxes, duties, imposts, fees and levies;

**Term** means the period that this Agreement is in force, as set out in Section 2;

**Urgent Operational Case** means a situation that, in the opinion of Intelsat, on the basis of the information then available to it, has caused or is likely imminently to cause: (i) damage to the Space Segment or the Satellites or related infrastructure of an entity other than Intelsat or (ii) major and sustained interference with Services provided to one or more of Intelsat's customers.

2. **TERM**

This Agreement shall start on the Effective Date and last for the Initial Period. Following the Initial Period, either Party may terminate this Agreement by giving the other Party 90 days written notice.

3. **THE SERVICES**

3.1 The services offered by Intelsat under this Agreement are set out in Annex A, Service Description. All services are offered on a non-exclusive basis only for the Customer's own use, or for use as a component of another product for its own use, or sale to its own customers. The Customer may not otherwise distribute or resell any Services without the express written agreement of Intelsat.

3.2 The Customer may request Services by submitting a Service Order to Intelsat in accordance with the Ordering Procedures. Intelsat may, at its sole discretion and without giving any reason refuse to accept any such requests.

3.3 Upon Intelsat's acceptance of a Service Order, and

28848-03886

subject to agreement by the Parties as to Charges and Service term and any other specific terms and conditions, the Parties shall enter into a Service Contract for the provision of that Service.

3.4 At the end of the Term, the Customer may no longer submit any additional Service Orders or request any new Service. The terms of this Agreement shall continue to govern any Service Contracts entered into prior to the expiration of the Term, for the duration of such Service Contract.

3.5 The Customer shall be responsible, at its own expense, for interconnection with the Services at the Earth Stations. The Customer may only activate Services under any Service Contract upon satisfactory completion of any testing of Earth Stations required by the Technical Guidelines and Operating Procedures.

3.6 Except as expressly stated otherwise in any Service Description, if the Customer wishes to renew or extend a Service with a total Service life of 6 months or more it should provide written notice to Intelsat no later than 90 calendar days prior to the Service Termination Date. Upon Intelsat's receipt of the notice as required above, Intelsat will negotiate, in good faith, terms and conditions, including price, for a new or extended Service Contract. If the Customer fails to give notice in accordance with this paragraph, or agreement on the new Service Contract is not reached by 60 calendar days before the applicable Service Termination Date, Intelsat shall be free to agree to supply such Satellite Capacity to any party after the Service Termination Date. For Services of less than 6 months, such Services may only be continued beyond the Service Termination Date upon agreement by the Parties with no obligation on Intelsat to reserve Satellite Capacity for any period of negotiation.

4. CHARGES AND PAYMENT

4.1 Recurring Charges shall be paid monthly in arrears. Intelsat shall issue invoices in respect of each month together with any non-recurring Charges at the beginning of the following calendar month. The Customer shall pay all Charges within 45 days of the date of the invoice. Payments should be made in U.S. Dollars (US$) to the following account:

Intelsat USA Sales Corp.
Citibank FSB, Washington, D.C.
ABA # 254070116
Account number    1509657210265683

4.2 Payments will only be considered made when they reach the above account. Interest will be charged on any payment not received by its due date at a rate of 16% per year from the due date, until the date it is received by Intelsat.

4.3 The Customer shall notify Intelsat as soon as possible of any dispute, but in any event within 20 days of the date of the invoice that is in dispute. The Customer shall pay the undisputed amount by the relevant payment-due date. If the Customer does not do so, the invoice shall be considered final and undisputed.

4.4 Intelsat may, at its sole discretion, require the Customer to provide it with Collateral as a condition precedent to providing the Service or at any time during the Term. Such Collateral will be held by Intelsat as a guarantee for payment of all Charges and other Customer liabilities and will not relieve the Customer of any responsibility for the timely payment of amounts payable to Intelsat. Intelsat shall be entitled to draw down upon or use or call upon, as appropriate, any Collateral for any late payment or other liabilities that the Customer may incur. Should Intelsat do so, the Customer shall immediately, on receipt of written notification from Intelsat, replace, or make up, the Collateral to the agreed figure. Failure to do so by the Customer shall be considered a material breach of this Agreement. Intelsat will return any Collateral to the Customer after the termination of the Agreement or Service Contract, as appropriate, once all outstanding indebtedness has been settled.

4.5 The Customer shall pay any and all Taxes levied on any Service, save for Taxes imposed upon or measured by Intelsat's income in the jurisdiction under the laws of which Intelsat is organised, and shall reimburse Intelsat for any such Taxes paid by Intelsat. If any Taxes are required to be withheld from amounts payable to Intelsat, or to the extent Intelsat (and not the Customer) is required to pay or actually pays any Taxes, any amounts payable to Intelsat by the Customer shall be increased so that the amount actually received by Intelsat is the amount Intelsat would have received had no Taxes been imposed.

5. SERVICE LEVELS

5.1 Intelsat will use reasonable efforts to provide the Services in accordance with the applicable Service Description.

5.2 If a Service Interruption occurs to any Service, following submission of evidence of such Service Interruption by the Customer and verification by Intelsat, Intelsat shall give the Customer an Interruption Credit to be credited against future Charges for that Service in accordance with the applicable Service Description.

5.3 Intelsat shall not be liable for any failure to supply any Service and in no event shall Interruption Credits be given in respect of any Service Interruption that is caused by:

(a) the failure or non-performance of any Customer-provided facilities or equipment (including Earth Stations or other points of connection);

(b) any act or omission of the Customer, its employees, agents or contractors; or

(c) any suspension of Service by Intelsat in accordance with the terms of this Agreement.

6. INTELLECTUAL PROPERTY

6.1 Subject to the terms of this Agreement, Intelsat grants the Customer a non-exclusive, revocable licence to use any of Intelsat's Intellectual Property only to the extent necessary to use the Services as set out in this Agreement in so far as Intelsat may make such an authorisation. This licence is subject to the Customer protecting Intelsat's rights in the Intellectual Property, including but not limited to monitoring and enforcing the terms of use against third parties. All rights to the Intellectual Property shall at all times remain the property of Intelsat, and the Customer shall not have any other right of use.

6.2 This licence does not release the Customer from its obligations to procure all necessary licences, etc. in accordance with the terms of this Agreement.

6.3 The Customer agrees to comply with all applicable export and re-export laws in connection with the transfer, delivery or disclosure of the Intellectual Property.

6.4 This licence does not authorise the Customer to use any service marks, trade names, designs, or trademarks or similar intellectual property rights belonging to Intelsat or any of its affiliates.

7. SUSPENSION

7.1 Intelsat may, without notice in Urgent Operational Cases, and by giving the Customer reasonable written notice in all other cases, suspend any of the Services in order to perform testing, maintenance or adjustment works to the Services or the Satellite Capacity. Intelsat shall seek to coordinate the timing of such action with the Customer in order to minimise any interruption to Services, and shall use reasonable efforts to minimise any such suspensions.

7.2    Intelsat, may without notice, suspend or terminate Services as required to comply with any applicable laws, regulations or government orders.

28848-03886

## 8. TERMINATION

8.1 At its sole option, Intelsat may suspend Services or terminate this Agreement or some or all outstanding Service Contracts immediately by giving written notice if the Customer:

(a) is in material breach of a term of this Agreement (other than a default in payment) and has failed to cure this breach within 30 days from the date of written notice from Intelsat, except in the case of Customer's failure to comply with applicable laws, regulations, rules or governmental orders, Intelsat may immediately suspend the Service; or

(b) fails to make payment of any sum due and owing to Intelsat under a Service Contract and such failure continues for a period of 15 days after provision of written notice of such failure by Intelsat.

8.2 Provided that the Customer is not in material breach of any of its obligations under this Agreement, the Customer may terminate a Service Contract immediately by giving written notice if Intelsat fails to meet the minimum performance criteria set forth in the Intelsat Technical Guidelines and Operating Procedures for that Service, and such failure is directly attributable to the negligence of Intelsat, its employees or affiliates, and is for a duration of greater than 15 consecutive calendar days (360 consecutive hours) following Intelsat's receipt of written notice of such failure.

8.3 Either Party shall be entitled to terminate this Agreement if the other Party files a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent, or files or has filed against it any petition or answer seeking any reorganisation, composition, liquidation or similar relief for itself under any applicable statute, law or regulation, and such petition filed against it is not stayed within 60 days; seeks or acquiesces to the appointment of any administrator, trustee in bankruptcy, receiver or liquidator or has such an appointment made; or makes any general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due.

8.4 In the event this Agreement is terminated by Intelsat under this Section 8, it shall mean termination of every then outstanding Service Contract.

8.5 Upon termination or expiration of this Agreement (or a Service Contract) for whatever reason, Intelsat shall no longer be required to provide any Services and the Customer shall cease using the Services and the Satellite Capacity and any outstanding indebtedness of the Customer (under the Agreement or the Service Contract as appropriate) to Intelsat shall become immediately due and payable together with any interest due thereon, provided that in event that this Agreement is terminated by Intelsat under this Section 8, the amounts payable by the Customer to Intelsat shall include any Charges that would have been payable in accordance with the terms of all outstanding Service Contracts of the Customer so terminated (at the then-current rate), plus the costs of collection.

## 9. LIMITATION OF LIABILITY

9.1 Intelsat warrants it will provide the Services with appropriate skill. Any and all other express or implied warranties are expressly excluded and disclaimed by Intelsat, save as expressly set out in this Agreement.

9.2 With the exception of claims for death or personal injury due to Intelsat's negligence, for which there is no limitation imposed, it is expressly agreed that Intelsat's sole obligation and the Customer's exclusive remedy for any direct loss whatsoever, arising out of or relating to this Agreement is Interruption Credits, and the Customer agrees that these are a genuine pre-assessment of loss and damage.

9.3 In no event shall either Party be liable for any indirect, special, punitive, incidental or consequential damages whatsoever arising out of or under this Agreement whether under contract, warranty, tort or otherwise, including, without limitation, loss of revenue or profits, regardless of the foreseeability of such damages.

9.4 The Customer shall require all of its customers to abide by these terms and conditions, including without limitation the above waivers of liability and shall incorporate in the terms and conditions applicable to any party with which the Customer contracts in relation to the Services, disclaimers of liability substantially similar to (but in no case less broad than) those set forth in this Section in favour of Intelsat and its affiliates.

## 10. INDEMNIFICATION

10.1 The Customer shall be liable for, and shall indemnify and hold harmless Intelsat (including any affiliate, or director, officer, employee or agent of Intelsat or its affiliates) from and against any direct or indirect loss, damage, liability or expense arising from any claim by a third party, in connection with the provision of Services and arising out of or in connection with:

(a) the fault or negligence or breach of this Agreement by the Customer;

(b) the Customer's breach of any national laws, rules, regulations or governmental orders applicable to it;

(c) the Customer's or any third party end-user's use of the Services, regardless of cause by the Customer, its affiliates or customers; or

(d) any claims relating to the information or content of programming or other material displayed or transmitted.

10.2 The Customer also shall be liable for, and shall indemnify and hold harmless Intelsat (including any affiliate) from and against, any loss or damage to Intelsat's Satellites or related Intelsat provided infrastructure and facilities that is caused by any act or omission of the Customer.

10.3 The Customer will not settle or compromise, or consent to any entry of any judgement in connection with any indemnity given under this Agreement, without Intelsat's written consent.

## 11. FORCE MAJEURE

11.1 Neither Party shall be liable for any failure to perform under this Agreement due to any unforeseeable act, event or cause beyond its reasonable control as agreed by the Parties ("Force Majeure Event") during the duration of the Force Majeure Event. Upon removal or cessation of the Force Majeure Event, all obligations under this Agreement shall resume.

11.2 Except in cases where a Force Majeure Event has been invoked by the Customer for failure to receive Services, the Customer shall remain liable for all of its payment obligations hereunder, regardless of the occurrence of a Force Majeure Event.

11.3 In the event that the Force Majeure Event exceeds thirty (30) consecutive days (as agreed by the Parties), the Parties shall meet to negotiate in good faith the continuation, suspension, extension, restructuring or other disposition of the affected Service. In no event shall either Party unilaterally take any action under this Section.

## 12. WARRANTIES

12.1 The Customer warrants that:

(a) it has obtained all applicable clearances, licences, consents and approvals necessary to enable it to operate, to receive and use the Services and Satellite Capacity and to perform its other obligations under this Agreement;

(b) it is in compliance with, and performance of its obligations hereunder will not violate or conflict with, any applicable telecommunications or other law or regulation of any jurisdiction to which it is subject, and that no further licences are necessary for the provision of any Services;

(c) it will only use and will procure that its customers only use the Services and/or display or transmit any information or content using or in connection with the Services in

Confidential and Proprietary

Intelsat USA Sales Corp.

28848-03886

compliance at all times with all applicable laws and regulations;

(d) it will follow established practices and procedures for frequency co-ordination and will not use the Services in a manner that could reasonably be expected to interfere with or cause physical harm to the Satellites or Space Segment; and

(e) it will not hold itself out as agent for Intelsat in any correspondence or other dealings relating directly or indirectly to the provision of the Services.

12.2 Each Party represents and warrants that as of the date of this Agreement (i) it has the right, power and authority to enter into and perform its obligations hereunder and the execution, delivery and performance of this Agreement shall not result in the breach or non-performance of any document, instrument or agreement by which it is bound; (ii) the execution, delivery and performance of this Agreement have been duly authorised by all necessary corporate action; and (iii) this Agreement constitutes legal, valid and binding obligations on that Party.

## 13. CONFIDENTIALITY

13.1 Intelsat and the Customer agree that it may be necessary to the performance of this Agreement for a Party to disclose Confidential Information to the other Party. The receiving Party shall use the same standard of care to maintain the security and confidentiality of all Confidential Information received from the disclosing Party as it uses in the maintenance of the security and confidentiality of its own Confidential Information, and in any event no less than reasonable care.

13.2 Neither Party shall, without the written consent of the other, disclose Confidential Information to any third party, unless required by law or competent authority to do so. Prior to such disclosure, the receiving Party shall provide the disclosing Party with sufficient notice to permit the disclosing Party to appeal or contest such requirement.

13.3 Intelsat may disclose the Customer's identity as a customer of Intelsat, and may publish this and the Customer's contact details as it reasonably sees fit.

13.4 Upon termination or expiration of this Agreement, each Party shall destroy all the other Party's Confidential Information and confirm in writing that it has done so or, if requested by that Party, return it to the other Party

13.5 The obligations contained in this Section shall survive the termination or expiration of this Agreement for a period of 5 years.

## 14. TECHNICAL COMPLIANCE

14.1 The Customer shall comply, or procure compliance, with the Intelsat Technical Guidelines and Operating Procedures in respect of any Earth Station or other point of connection provided by, or authorised for use, by the Customer in connection with any Services. Intelsat shall not be required to activate any Services for use in connection with any non-compliant Earth Station. Upon notice from Intelsat that an Earth Station used in connection with a Service Contract hereunder has become non-compliant, such non-compliance shall be remedied by the Customer immediately. If such non-compliance continues, Intelsat shall have the right, with immediate effect, to suspend the provision of Services in respect of the Earth Station used until the date on which the Customer procures compliance with the Intelsat Technical Guidelines and Operating Procedures. The Customer shall not be relieved of its obligation to pay for Services by reason of Intelsat's suspension of the provision of Services in the event that such suspension is due to any such non-compliance.

14.2 Intelsat may manage (i.e., change beam pointing, move, replace, relocate or reconfigure) Satellite Capacity during the term of a Service Contract in order to achieve optimally efficient use, always provided this does not result in an appreciable degradation in any Service below the applicable Service Description, and the Customer agrees to operate on either sense of polarisation and across an entire frequency band or bands used by Services. Intelsat will make reasonable efforts to avoid frequent relocations. Intelsat will provide reasonable written notice to the Customer concerning any Service to be replaced, relocated or reconfigured with information on the alternative assignment. Unless the Customer responds in writing within 5 business days of receipt of the notice explaining why the new assignment is not appropriate, the Customer shall be taken to have agreed. If the Customer raises good faith objections, Intelsat and the Customer will attempt in good faith to resolve them.

## 15. NOTICES

15.1 All notices and other communications from either Party to the other shall be made in writing, by e-mail, fax or letter, such letters to be delivered by courier, and shall be deemed to be received upon actual delivery or completed fax or upon email transmission, addressed to the other Party as follows:

Intelsat USA Sales Corp.
3400 International Drive, N.W.
Washington, D.C. 20008

Telephone:   (202) 944-7554
Fax:         (202) 944-8125
e-mail:      uscontractnotices@intelsat.com
Attention:   Director, Contracts

Customer Information:

Galaxy Broadcasting Networks LLC,
2900 Linden Lane, Suite 100,
Silver Spring,
MD 20910

Telephone:   (301) 589-7000
Fax:         (301) 588-3206
e-mail:      maruthimanney@hotmail.com
Attention:   Dr. Maruthi Manney
             C.E.O.

## 16. JURISDICTION

The validity, interpretation, operation and effect of this Agreement shall be governed in all respects by the laws of the State of New York and both Parties irrevocably agree that the United States District Court for the District of Columbia shall have jurisdiction to settle any dispute arising out of or in connection with this Agreement. Such jurisdiction shall be exclusive, save that Intelsat shall also have the right to sue the Customer in the courts of the jurisdiction of its incorporation. Nothing contained in this Section shall limit the right of either Party to seek immediate injunctive relief proceedings against the other Party in any other court or in the courts of more than one jurisdiction at the same time to compel performance under this Agreement.

## 17. MISCELLANEOUS

17.1 This Agreement may only be amended with the written agreement of the Parties, save that Intelsat may by giving the Customer written notice amend the following without the prior consent of the Customer:

(a) the terms and conditions of the Annexes, always provided that any such amendments shall apply only to future Service Contracts, and not to any existing Service Contracts, and add new Annexes; and

(b) the Intelsat Technical Guidelines and Operating Procedures applicable to existing Service Contracts in the event of an Urgent Operational Case.

17.2 If any provision of this Agreement is found to be invalid or unenforceable, it shall not affect the validity and enforceability of any other provision of this Agreement, and the invalid or

Confidential and Proprietary                                    Intelsat USA Sales Corp.

28848-03886

unenforceable provision shall, if possible, be replaced with a provision consistent with the intentions of the Parties.

17.3 The Customer may not assign, transfer or sublease any rights or obligations under this Agreement to any other party without the express written consent of Intelsat.

17.4 Any Sections which by their nature are intended to survive the termination of this Agreement shall so survive.

17.5 No waiver by either Party hereto of any particular default by the other Party shall affect or impair either Party's rights in respect of any subsequent default of any kind by the other Party. Subsequent acceptance by Intelsat of any payments by the Customer shall not be deemed a waiver of any preceding breach by the Customer of any of the terms or conditions of this Agreement. No waiver shall be effective unless made in writing by a Party's authorised representative.

17.6 The rights, powers and remedies provided in this Agreement are cumulative and may be exercised singularly or cumulatively.

17.7 Any period of time referred to in this Agreement shall be calculated in Greenwich Mean Time.

17.8 This Agreement is intended for the sole benefit of the Parties and no third party (including, without limitation, customers of the Customer) may seek to enforce or benefit from this Agreement.

17.9 All payments to be made by the Customer to Intelsat hereunder shall be made in full, and shall be free and clear of any right of set-off and from any restriction, condition or deduction.

17.10 The Parties' relationship created by this Agreement is that of independent contractors. This Agreement does not in any way create or authorise any partnership, principal-agent, master-servant, joint venture or other similar relationship between the Parties.

17.11 The language of this Agreement and all other communications between the Parties regarding the performance of this Agreement shall be English. If this Agreement or any part thereof, is executed in more than one language, the English version shall prevail in the event of any conflict between the Parties or inconsistencies in the translations.

17.12 This Agreement constitutes the entire agreement of the Parties and supersedes all prior correspondence, representations, proposals, negotiations, understandings, and agreements of the Parties, oral or written, with respect to the subject matter.

28848-03886

IN WITNESS WHEREOF, each of the Parties hereto has duly executed and delivered this Agreement effective on the day and year first above written.

| INTELSAT USA SALES CORP. | GALAXY BROADCASTING NETWORKS LLC |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: PAUL F. KONONT | Name: MARUTIH S. MANNEY |
| Title: DIRECTOR, USA Sales Mgt | Title: C.E.O |
| Date: 7/18/04 | Date: 7/16/04 |